MANSFIELD, Justice
(dissenting).
Although the court’s opinion offers a reasonable way to approach the habitual offender enhancement colloquy in the future, it differs from the approach required by our current rules and precedent. In addition, the facts of this particular case do not warrant relief. Therefore, I would affirm Harrington’s conviction under the enhancement. Any changes should occur through amendments to Iowa Rule of Criminal Procedure 2.19(9), with public notice and opportunity for comment.
Two points about the record should be noted. First, Harrington was informed at the beginning of trial of the consequences of the enhancement. A record was made then of the State’s plea offer: i.e., a guilty plea to first-degree theft without an enhancement. The district court thoroughly explained, and Harrington well understood, that if convicted of second-degree robbery with the enhancement he would receive fifteen years with a 70 percent minimum. As the court told him, “70 percent of 15 years is a long time.” Harrington showed familiarity with the workings of the enhancement as he participated in this discussion and turned down the State’s proposed deal.
*49 Second, Harrington took the stand at trial and admitted he had two prior felonies, both on direct and on cross-examination. Thus, his prior felony convictions were a matter of reeord before this case even got to the rule 2.19(9) enhancement phase.
Rule 2.19(9) states that “[i]f the offender denies being the person previously convicted,” there shall be a jury trial “on the issue of the offender’s identity with the person previously convicted.” Iowa R. Crim. P. 2.19(9). In the enhancement phase, Harrington did not deny being the person previously convicted. Rather, he said he wanted the jury to decide whether he was a habitual offender, something that rule 2.19(9) does not provide:
THE COURT: All right. So you admit those are your two felonies? THE DEFENDANT: Right. '
MR. KELLY: You have given up your right to have a hearing? THE DEFENDANT: No. I’m not giving up that right.
THE COURT: Well, if you’re admitting those are your two previous felonies—What is the purpose of bringing the jury back in for that?—because you’re just admitting to them. THE DEFENDANT: Because I want the jury to make a decision whether or not—
THE COURT: You want the jury to make a decision, but you’re not denying those are your convictions? This doesn’t make any sense. THE DEFENDANT: I would rather have the jury make a decision whether or not they find me an habitual offender.
MS. DEVINE: Because one of the things—I’ve only actually proceeded with this one other time, but the Court will ask the defendant in the presence of the jury, “Are you the defendant that was convicted of this?” And he—I mean, he has to answer yes or no, and then, you would ask him, “Are you the defendant who was convicted of this on”—and then, he would have to answer yes or no, and then, it becomes a trial if he says no to both of them.
THE COURT: I see what you are saying. Yes, there’s no—-Why would we have a trial because he is stipulating those are his two offenses?, is what you are saying, Ms. Devine? Right?
'MS. DEVINE: Well; I mean, I guess, just for the record, he would have to either say yes or no to both, and then, we would proceed with the trial.
MR. KELLY: Your Honor, it’s been a long time since I’ve done this. I don’t remember that the State can put Mr. Harrington on the stand.
THE COURT: No. She is not saying in front of the jury. She is just saying in terms of—purposes of whether or not we have to have a trial, which is like it’s an OWI III. You say, “Do you have two previous convictions of OWI?”, and if the guy says, “Yes,” that’s it. If he admits those are his two felony convictions, we are not having a trial.
MS. DEVINE: He already admitted under oath he has two previous felony convictions, and under 902.8 and 902.9, a person who has two felony convictions is an habitual offender.
MR. KELLY: I understand my client has admitted the accuracy of these two convictions,
THE COURT: Then we won’t have a trial on it.
MR. KELLY: What I am saying—
THE COURT: It’s a waste of time.
MR. KELLY: I don’t remember the actual procedure as to whether we can avoid having the—
THE COURT: It’s only when he denies these are his convictions. So, Mr. Harrington, do you admit that you were convicted on March 5th, 2009, to the *50 offense of Possession with Intent to Deliver a Schedule I Controlled Substance, in violation 124.401(l)(c) in FECR315494? I’ve got a certified copy of it. So you admit that’s your conviction; yes or no? (A discussion was held off the record with the defendant and his attorney.)
THE COURT: Look. I don’t want to play games here, you know. THE DEFENDANT: Yes.
THE COURT: Then, I have a certified copy in the Iowa District Court for Jasper County, FECR006790, where you were—a certified copy of the Trial Information—where you entered a plea of guilty to Going Armed with Intent, in violation of Section 708.8 and got a five-year prison sentence, and so, it looks like, on June 12, 2000, in Jasper County, and I think I already read the number, so is that your conviction; yes or no? THE DEFENDANT: Yes.
THE COURT: It says, “Andre Letroy Antwan Harrington.” Did you say yes? THE DEFENDANT: Yes. That was my conviction. It was ran concurrent with my time.
THE COURT: All right. Then there’s no reason to have the habitual offender trial; right, Ms. Devine? There’s no point in it because he is stipulating it.
MS. DEVINE: Right. I just wanted to pull up the case, just to make sure of any case law on Westlaw, but that’s my understanding, it’s only if he answers no to the Court’s colloquy.
THE COURT: Yes, if he denies that it’s him.
MS. DEVINE: Right.
THE COURT: So he admits it, that these are both his felony convictions, and he also admitted to the jury that he had two felony convictions, so the purpose of having an habitual offender trial doesn’t exist because the issue is moot, so we are not going to have one, so go ahead and excuse the jury. Thank you. Okay. The jury is going to be excused. (The jury was excused at this time.)
THE COURT: It would be a complete and total waste of time to do anything else since he’s admitted his previous criminal record. Sentencing will be January 22nd, 2015, at 2:30 p.m.
I find no fault with what the trial judge did here. The only issue to be tried to a jury would be whether Harrington was the person previously convicted of the two felonies, and Harrington admitted he was.
Rule 2.19(9) does not have the same bells and whistles as rule 2.8(2). For example, it does not mandate that the defendant be informed of the mandatory minimum punishment, maximum possible punishment, the right of trial by jury, or the necessity to file a timely motion in arrest of judgment in order to challenge the plea. See id. r. 2.8(2)(5)(2), (2)(6)(4), (2)(d).
There is good reason for these differences. A defendant often pleads guilty as part of a risk-reward calculus to avoid the possibility of more severe consequences if he or she goes to trial and is convicted. In such cases, there is an open question whether the defendant is actually guilty of the charge or charges to which he or she is pleading guilty, but the defendant is concerned that things would end up worse if a jury finds him or her guilty of all the charged offenses following a trial. There, it is imperative that the defendant be fully informed of the adverse consequences of pleading guilty and the rights he or she is giving up by not going to trial.
But stipulating to the prior convictions in the enhancement phase rarely if ever involves such a strategic choice. Usually, a defendant admits the prior convictions because a trial would be a waste of time. Thus, while the defendant should certainly *51 be cognizant of what he or she is doing, I question whether the colloquy needs to include all the items identified by the majority in this case.
Rule 2.19(9) reflects the differences between the two proceedings. Therefore, it does not require the defendant to be told of the right to a jury trial on the prior convictions. After all, the defendant has just been through a jury trial and should have a good understanding of what that entails.
Nor does rule 2.19(9) require the defendant to be told of the right to file a motion in arrest of judgment to challenge his stipulation to the convictions. A timely motion in arrest of judgment is a way to challenge a guilty plea after the fact, but proceedings to determine prior convictions are subject to the normal rules of error preservation. In fact, objections other than identity are supposed to be asserted before trial. See id. r. 2.19(9) (“Other objections shall be heard and determined by the court, and these other objections shall be asserted prior to trial of the substantive offense in the manner presented in rule 2.11.”); see also State v. Long, 814 N.W.2d 572, 574 (Iowa 2012) (“The rule also requires that if the defendant has any other objections to the prior conviction evidence, he must assert those objections prior to trial”).
There is some logic to this as well. If a guilty plea is taken but later set aside based upon a motion in arrest of judgment, no jury has been dismissed because none was ever summoned. But if the defendant is permitted to withdraw at a later date from a stipulation to prior convictions, then it is necessary to start over with a new jury. This should be avoided, so long as the process is fair to the defendant.
In State v. Kukowski, we held that a defendant’s admission of prior convictions in the enhancement phase must be “voluntary and intelligent,” and I have no quarrel with that proposition. See 704 N.W.2d 687, 693 (Iowa 2005). Also, State v. Brady can be read as indicating that the court has an obligation to inform the defendant of the punishment resulting from the enhancements. See 442 N.W.2d 57, 58-59 (Iowa 1989).
My review of the record convinces me that Harrington made a voluntary and intelligent admission of his prior felony convictions, not just at the enhancement phase but when he testified at trial. Harrington had considerable understanding of the criminal justice system and actively participated with counsel and the court in various discussions that took place outside the presence of the jury. The district court also advised Harrington, albeit at the beginning of trial, of the effects of the enhancement. See State v. Oetken, 613 N.W.2d 679, 688 (Iowa 2000) (finding no error when “[t]he trial court discharged its duty to inform the defendant as to the ramifications of an habitual offender adjudication”).
Furthermore, Kukowski held that an abuse of discretion standard applied to a defendant’s attempt to withdraw an admission of prior convictions. See 704 N.W.2d at 693. We said that reversal was required only when the abuse of discretion was prejudicial. See id. at 693-94. In finding prejudice in that case, we observed, “If the court had accepted defense counsel’s earlier denial of the prior convictions, then there would have been no other evidence before the court to support the prior conviction at issue.” Id. at 694. The present case is different, because Harrington had already admitted his convictions during the principal trial. If Kukowski remains the law, then I think affirmance is required here.
*52 Again, I do not dispute that the majority’s approach may have merit going forward. But given the current state of the law and the record in this case, I would affirm the proceedings below including the thoughtful decision of the court of appeals. We should look to rulemaking for any needed amendments to rule 2.19(9).
Waterman, J., joins this dissent.